In re ESTATE of R. L. ADAME, Deceased, Consuelo C. Adame, Individually and Executrix, and Consuelo C. Adame, Surviving Wife, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 20131.

United States Court of Appeals
Fifth Circuit
July 24, 1963.

Hume Cofer, John D. Cofer, Douglass D. Hearne, Cofer, Cofer & Hearne, Austin, Tex., for petitioners.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Crane C. Hauser, Chief Counsel, Rollin H. Transue, Atty., I. R. S., John M. Brant and Joseph Howard, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before HUTCHESON, Circuit Judge, LUMBARD, Chief Judge,* and BROWN, Circuit Judge.

LUMBARD, Chief Judge.

■ This appeal questions whether the deceased taxpayer's failure to declare as income monies he diverted to himself from school funds which he controlled can be considered as having been done with willful and fraudulent intent to evade taxes as the Tax Court held, 37 T.C. 807 (1962), although it was settled law at the times in question, 1948 through 1953, that money so illegally diverted was not taxable income. We hold that the failure to declare such unlawful gains could not be evidence of fraudulent intent. As there is no other evidence sufficient to support the Tax Court's findings we reverse the assessment of deficiencies which are barred by the statute of limitations and the penalties for the years in question.

When the government commenced the deficiency proceedings, the statute of limitations had already run as to the returns filed by the deceased, R. L. Adame, for the years 1948 through 1952. But the government claimed relief from that bar under § 276 of the Internal Revenue Code of 1939 on the ground that returns were filed fraudulently, with intent to evade taxes.[1]

Adame became County Superintendent of Schools of Duval County, Texas, in

---

* Of the Second Circuit, sitting by designation.

1. The assessment totalled $17,699.85, as follows:

Additions to the Tax, I.R.C. 1939

| Year | Income Tax Deficiency | Penalties for fraud under Section 293(b) | Penalties for failure to file or pay installment of estimated tax under Section 294(d) (1) (A) |
|---|---|---|---|
| 1948 | $1,036.42 | $ 518.21 | $ 89.64 |
| 1949 | 2,704.30 | 1,352.15 | 243.03 |
| 1950 | 2,017.12 | 1,008.56 | 180.84 |
| 1951 | 2,143.20 | 1,071.60 | 191.30 |
| 1952 | 1,196.92 | 598.46 | 105.33 |
| 1953 | 2,048.37 | 1,024.19 | 179.21 |

1934. In the years 1948 through 1953, shortly after the school term began, the trustees of each of 27 Common School Districts in the county gave Adame about 70 to 80 blank signed checks for the payment of school expenses.[2] Certain school supplies for these school districts were purchased from the San Diego Lumber and Hardware Company in San Diego, Texas. Adame would go to the Hardware Company and present the school checks in payment of the accounts. But on various occasions these checks would be drawn for amounts in excess of what was due. On such occasions an agent of the Hardware Company would cash the checks at a local bank, return with the cash to the Hardware Company, retain sufficient cash to pay the school accounts, write receipts in duplicate covering the amounts actually due, and give the total remaining amounts in cash to Adame who did not take copies of the receipts but left them with the Hardware Company. In some instances Adame applied some of the cash in payment of his own personal account at the Hardware Company. The cash thus received by Adame during the years 1948 through 1953, which totalled $51,845.06, was claimed by the Commissioner to constitute income which Adame failed to include in his tax returns. It is clear that Adame took money belonging to the School Districts to which he had no claim and to which he made no claim.

In 1946, the Supreme Court held in Commissioner of Internal Revenue v. Wilcox, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752, that funds taken or received without any "claim of right" were not taxable income. That ruling accorded with this court's decision in McKnight v. Commissioner, 127 F.2d 572 (5 Cir. 1942). In Commissioner of Internal Revenue v. Wilcox, supra, the taxpayer was a bookkeeper in a transfer and warehouse company in Reno, Nevada. He failed to credit customers with cash which they paid him and put the cash in his own pocket and lost it gambling. What Adame did is very similar to what Wilcox did.[3] Adame had no "bona fide legal or equitable claim" to the money. Wilcox, supra, 327 U.S. at p. 408, 66 S.Ct. at p. 549.

In Rutkin v. United States, 343 U.S. 130, 72 S.Ct. 571, 96 L.Ed. 833 (1952), the taxpayer obtained $250,000 by threatening to kill one Reinfeld and his family. The Supreme Court held gains derived from such extortion to be taxable. Rutkin in fact did claim the money to be his. Even though Mr. Justice Burton, speaking for the majority in Rutkin, expressly limited Wilcox to its facts, 343 U.S. at 138, we can see little if any distinction between the disloyalty of Adame and

2. Adame had authority to purchase equipment and supplies, Texas Civil Stats. art. 2740b, § 15 (1951), and to receive and approve vouchers therefor, Texas Civil Stats. art. 2693.

3. Although the Tax Court relied heavily upon the results of criminal proceedings against Adame in the Texas state courts, we believe that the existence or nonexistence of such proceedings, or the result therein is not material, see McKnight v. Commissioner, 127 F.2d 572 (5 Cir. 1942); J. J. Dix, Inc. v. Commissioner, 223 F.2d 436 (2 Cir. 1955).

Inasmuch as both sides have briefed the matter of the state criminal proceedings without raising any questions as to their relevance, however, we note the facts pertaining thereto.

Adame was convicted of felony theft in Duval County in 1954, but the Texas Court of Criminal Appeals reversed the judgment on the ground that the grand jury had been illegally organized. Adame v. State, 162 Tex.Cr.R. 178, 283 S.W.2d 223 (1955).

Then at the April 1955 term, the grand jury indicted Adame on four counts; one count charging felony theft, two counts charging embezzlement, and the final count charging larceny by bailee. In 1956 the jury found him "guilty of the offense of theft of property over the value of $50, by false pretext, * * *." but made no finding on the other counts. The court thereupon adjudged that he was "guilty of the offense of theft of property over the value of $50, by false pretext, as found by the jury * * *." While appeal was pending from this conviction, Adame died.

that of Wilcox. Each took money of his employer knowing that he had no right to it; each was able to do so because of his position of trust in receiving money in one case and of disbursing money in the other.

When the Supreme Court in James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961) finally gave official burial to what was left of Wilcox and held that embezzled funds are taxable income to the embezzler, it refused in the same case to give its pronouncement retroactive consequences. James had embezzled $738,000 from his employer-union and an insurance company from 1951 through 1954. Although the Court held that this was taxable income to James it said he could not as a matter of law be prosecuted for willfully attempting to evade taxes for those years because "the element of willfulness could not be proven * * * so long as the statute contained the gloss placed upon it by Wilcox at the time the alleged crime was committed [1951 through 1954]," 366 U.S. 221–22, 81 S.Ct. 1057. Whether the issue is the commission of crime by fraudulent evasion of taxes, or fraudulent intent which would toll a statute of limitations, the issues are in essence the same. It would be equally improper to hold that the taxpayer's failure to declare monies was sufficient basis for inferring fraudulent intent when in both cases the law as it was understood at the time did not require him to report the monies as taxable income.

The Commissioner also seeks to avoid the consequences of the Wilcox and James decisions by urging that Adame acquired title by a fraudulent scheme. No cases are cited to us to support such a theory. From the conceded facts it appears that no title to the monies could have been passed as the Hardware Company and Adame knew they were the property of the school fund. Moreover, Adame never claimed any right to the money; his misuse of his power to draw out school monies because the trustees had carelessly given him blank checks which he could sign did not pass title to the money. Nor do we think that the prior decision of this court in Akers v. Scofield, 5 Cir., 167 F.2d 718 (1948) supports the Commissioner's view as there the party having title to the money did intend to pass the title, albeit on false representations.

Accordingly, we reverse that portion of the Tax Court order which assesses penalties under Internal Revenue Code of 1939, § 293(b) against petitioner for the years 1948 through 1953 and which assesses tax deficiencies against the petitioner for the years 1948 through 1952. The assessment of penalties under Internal Revenue Code of 1939, § 294(d) (1) (A) for the years 1948 through 1953 is likewise reversed.[4] The deficiency for the year 1953—which was not barred by the statute of limitations [5]—in the amount of $2,048.37 is proper and that portion of the order is affirmed.

HUTCHESON, Circuit Judge (dissenting).

I am convinced that the findings, decision, and order of the Tax Court are correct and should be affirmed. I, therefore, upon the considerations and for the reasons stated in the Tax Court's opinion, dissent from the opinion and order reversing the Tax Court.

4. Although we uphold the assessment of the deficiency for 1953, we think it would be unfair to penalize the taxpayer for failure to file a declaration of estimated tax thereon when no tax was due under the existing law. In such a case, the failure "to make and file a declaration of estimated tax within the time prescribed" is certainly "due to reasonable cause and not to willful neglect." Internal Revenue Code of 1939, § 294(d) (1) (A).

5. There is no requirement that the Commissioner find proof of willfulness in order to assess a tax deficiency where the statute of limitations has not run or, as seems to be the case here, where it has been waived.