**George C. McGEE, Petitioner,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 74–2006.**

United States Court of Appeals, Fifth Circuit.

Sept. 26, 1975.

Rehearing and Rehearing En Banc Denied Oct. 31, 1975.

---

1122

S. L. Greenberg, Beaumont, Tex., for petitioner.

Scott P. Crampton, Asst. Atty. Gen., U. S. Dept. of Justice, Meyer Rothwacks, Chief, Appellate Sec., Meade Whitaker, Chief Counsel, Chris J. Ray, Atty., I. R. S., Elmer J. Kelsey, Joseph M. McManus, Attys., Tax Div., Dept. of Justice, Washington, D. C., for respondent.

Before GOLDBERG and RONEY, Circuit Judges, and LYNNE, District Judge.

LYNNE, District Judge:

The focus of this appeal is on the contentions of appellant, George C. McGee (McGee) that the Tax Court[1] erred in its holding that the amounts received by him from Port Arthur Marine Engineering Works (PAMEW) in the years 1957 to 1963 were taxable income and that the Commissioner carried his burden of proving fraud under both sections

1. 61 T.C. 249.

6501(c), 26 U.S.C. 6501(c) [2] and 6653(b), 26 U.S.C. 6653(b) [3] of the Internal Revenue Code of 1954. We affirm.

In its opinion the Tax Court thoroughly canvassed the facts developed upon stipulated and testimonial evidence.[4] They are severely capsulated herein to highlight our rationale.

Throughout the years in question McGee was Port Engineer for Gulf Oil Corporation (Gulf) in Port Arthur, Texas, and filed individual income tax returns with the District Director of Internal Revenue, Austin, Texas. He was responsible for maintenance and repairs of Gulf's ships and other marine vessels.

Within the scope of his authority for Gulf, he employed PAMEW to make repairs upon vessels which he had determined to have been necessary and which he supervised and directed. He received, examined and approved for payment invoices rendered by PAMEW to Gulf which were consistently paid by check payable to PAMEW.

With the cooperation of W. O. Nelson, the owner of PAMEW, he contrived a sordid scheme of "kickbacks". At McGee's request, invoices submitted by PAMEW contained either in whole or in part charges for services not actually performed. Such invoices were initialed by McGee to indicate his approval and were paid by Gulf. The excess over the true amount due, varying from five to fifty percent, was remitted to McGee as his share.[5]

Such payments were made to McGee in five ways: (1) in cash given to him in the offices of PAMEW's president; (2) by check drawn on PAMEW payable to and endorsed by him; (3) by check drawn on PAMEW payable to McGee and endorsed for deposit in McGee's bank account by PAMEW's president; (4) by check drawn on PAMEW payable to PAMEW's president but endorsed payable to McGee, and (5) by check payable to PAMEW's president, but endorsed for deposit to McGee's bank account. None of these payments were reported by McGee on his income tax returns for the years in question.

During the same period of time McGee employed in behalf of Gulf another marine contractor, Gulf Copper and Manufacturing Company (GCMC). As a condition of doing business with Gulf, GCMC was required to and did remit to

2. 26 U.S.C. 6501(c) in pertinent part reads as follows:

    \*    \*    \*    \*    \*    \*

(c) Exceptions.—

  (1) False return.—In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time.

  (2) Willful attempt to evade tax.—In case of a willful attempt in any manner to defeat or evade tax imposed by this title (other than tax imposed by subtitle A or B), the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.

    \*    \*    \*    \*    \*    \*

3. 26 U.S.C. 6653(b) in pertinent part reads as follows:

    \*    \*    \*    \*    \*    \*

(b) Fraud.—If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an

amount equal to 50 percent of the underpayment.

    \*    \*    \*    \*    \*    \*    \*

4. It is noteworthy that McGee did not elect to testify in his own behalf in the proceedings before the Tax Court.

5. In the years in question, McGee received the following amounts by checks drawn on the bank account of PAMEW which he did not report on his income tax returns for those years:

| TAXABLE YEAR | RECEIPTS |
| --- | --- |
| 1957 | $10,511.41 |
| 1958 | 6,807.91 |
| 1959 | 6,917.77 |
| 1960 | 7,287.59 |
| 1961 | 6,898.61 |
| 1962 | 2,784.00 |
| 1963 | 2,800.00 |

In addition, McGee received from such source cash in 1957, in at least the amount of $2,183.61, and in 1958, in at least the amount of $1,191.75, also unreported.

McGee an agreed upon percentage of the proceeds of its invoices. Such invoices were not false or padded, but for work actually performed by it for Gulf. GCMC reported all payments made to McGee on Treasury Forms 1099 and, aware of this, McGee included such sums in his income tax returns.

In the course of an audit of his returns for the years in question, performed in 1965, McGee denied to the investigating revenue agent that he had received any funds from PAMEW.[6]

Against this factual backdrop, the starting point is *Commissioner of Internal Revenue v. Wilcox*, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752 (1946). Wilcox was a bookkeeper for a Nevada company. When its books were audited it was discovered that he had converted a substantial sum of money to his own use, which he frittered away in gambling. In affirming the Ninth Circuit's reversal of the Tax Court decision, the Court squarely held that embezzled money did not constitute taxable income.

Six years later, in *Rutkin v. United States*, 343 U.S. 130, 72 S.Ct. 571, 96 L.Ed. 833 (1952), the Court determined that money obtained by extortion was income taxable to the extortioner under Section 22(a) of the Internal Revenue Code. Rutkin had obtained a large sum of money from one Reinfeld by, among other pressures, threats to kill Reinfeld and his family. In affirming Rutkins conviction under 26 U.S.C. § 145(b) for willfully attempting to evade or defeat federal taxes, arising out of his failure to report such money on his income tax return, it reasoned that

An unlawful gain, as well as a lawful one, constitutes taxable income when its recipient *has such control* over it that, *as a practical matter, he derives readily realizable economic value from it.* Burnet v. Wells, 289 U.S. 670, 678, 53 S.Ct. 761, 764 77 L.Ed. 1439; *Corliss v. Bowers*, 281 U.S. 376, 378, 50 S.Ct. 336, 337, 74 L.Ed. 916. That occurs when cash, as here, is delivered by its owner to the taxpayer in a manner which allows the recipient freedom to dispose of it at will, *even though it may have been obtained by fraud and his freedom to use it may be assailable by someone with a better title to it.* [Emphasis added].

Finally, it defused *Wilcox* by flatly stating: "We limit that case to its facts." 343 U.S. at 138, 72 S.Ct. at 576.

The last of the triology is *James v. United States*, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961). James, a union official, with another person, embezzled large sums of money during the years 1951 through 1954 from his employer-union and from an insurance company with which the union was doing business. He failed to report these amounts in his gross income in those years and was convicted for willfully attempting to evade the federal income tax due for the years 1951 through 1954 in violation of Section 145(b) of the Internal Revenue Code of 1939, and Section 7201 of the Internal Revenue Code of 1954.

*James* expressly overruled *Wilcox*. Implicit is its holding that the funds embezzled by James during the years 1951 through 1954 constituted taxable income in each of such years.[7] A

---

**6.** However, on November 27, 1963, Gulf filed a complaint in the United States District Court for the Eastern District of Texas seeking recovery of funds which, Gulf alleged, *inter alia*, McGee had obtained from it by fraud and breach of fiduciary duty. The action was ultimately settled for $70,000.00.

**7.** That this Court so read *James* was made explicit in *Adame's Estate v. Commissioner of*

*Internal Revenue*, 320 F.2d 811, at 814 wherein after reference to *James* we stated

Although the Court held that [the sum of $738,000 embezzled from his employer-union and an insurance company from 1951 through 1954] was taxable income to James * * *.

*fortiori*, it compels us to hold, as we do, that the sums received by McGee from PAMEW during the years 1958 through 1963 constituted taxable income in each of such years.

Although the conviction of James was reversed, it does not follow that the Court limited the principles enunciated in its opinion to prospective application only. On the contrary, it referred to its definition of willfulness in *Holland v. United States*, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150, as "involv[ing] a specific intent which must be proven by independent evidence and which cannot be inferred from the mere understatement of income." It concluded with the belief— "that the element of willfulness could not be proven in a *criminal prosecution* for failing to include embezzled funds in gross income in the year of misappropriation so long as the statute contained the gloss placed upon it by *Wilcox* at the time the alleged crime was committed." [Emphasis added]. 366 U.S. at 221, 81 S.Ct. at 1057.

If we were writing on a clean slate we would feel impelled to explore whatever differences there may be, both qualitatively and quantitatively, in the proof required to establish civil fraud and intent to evade tax which would toll the statute of limitations and justify additions to tax, on the one hand, and that required to prove willfulness in a criminal prosecution, on the other.

However, another panel of this Court has foreclosed this tempting judicial exercise. In *Adame's Estate v. C.I.R.*, 320 F.2d 811 (5th Cir. 1963), in a case remarkably similar to this on some of its facts, the Court categorically stated:

Whether the issue is the commission of crime by fraudulent evasion of taxes or fraudulent intent which would toll a statute of limitations, the issues are in essence the same. 320 F.2d at 814.

But that is not to say that *Adame's Estate* controls the result to be reached in the case *sub judice*. That Court explicated its precise holding as follows:

We hold that the failure to declare such unlawful gains could not be evidence of fraudulent intent. *As there is no other evidence sufficient to support the Tax Court's findings* we reverse the assessment of deficiencies which are barred by the statute of limitations and the penalties for the years in question. [Emphasis added]. 320 F.2d at 812.

Matters stand differently here. We are instructed by *Commissioner of Internal Revenue v. Duberstein*, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960), that:

Where the trial has been by a judge without a jury, the judge's findings must stand unless "clearly erroneous." Fed.Rules Civ.Proc., 52(a). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746. The rule itself applies also to factual inferences from undisputed basic facts, *id.*, at 394, 68 S.Ct. 525, as will on many occasions be presented in this area. *Cf. Graver Tank & Mfg Co. v. Linde Air Products Co.*, 339 U.S. 605, 609–610, 70 S.Ct. 854, 94 L.Ed. 1097. And Congress has in the most explicit terms attached the identical weight to the findings of the Tax Court. I.R.C., § 7482(a). [Footnote omitted]. 363 U.S. at 291, 80 S.Ct. at 1200.

■ The record of the proceedings in the Tax Court has been subjected to critical scrutiny. Recognizing that the Commissioner had the burden of proving fraud by clear and convincing evidence, that Court analyzed its subsidiary findings of fact which were summarized in the introduction to this opinion and made the ultimate finding of fact that

he had proved fraud, without reliance on McGee's mere failure to report income, standing alone, as evidence of his fraudulent intent.[8] We hold that this finding of fact is not clearly erroneous and that the result reached is far from being contrary to the truth and right of the case.[9]

Independent record evidence upon which the Tax Court focused in its search for an elusive fraudulent intent may be severely capsulated:

1. From the five devious methods employed by McGee in extracting kickbacks from PAMEW the Tax Court could properly infer that such methods were designed to conceal income from the government as well as from his employer.

2. From McGee's disparate treatment of illegal gains derived from GCMC and PAMEW the Tax Court could properly infer fraud with intent to evade tax. The former were reported because he knew that GCMC was reporting its payments to him on Treasury Form 1099. The latter he concealed with the knowledge that they were not being reported by PAMEW.

3. McGee's deliberate misrepresentation to the revenue agent in 1965 that he had received no money from PAMEW during the period in question was properly treated by the Tax Court as an indicium of his prior intent to evade taxes. *Estate of Upshaw v. Commissioner of Internal Revenue*, 416 F.2d 737 (7th Cir. 1969), *cert. den.* 397 U.S. 962, 90 S.Ct. 993, 25 L.Ed.2d 254 (1970). McGee's behavior in this regard may be contrasted to that of the taxpayer in *Toledano v. Commissioner of Internal Revenue*, 362 F.2d 243 (5th Cir. 1966), wherein the taxpayer's good faith cooperation with the Internal Revenue Service was cited as

evidence from which absence of fraudulent intent might be inferred. *See also Powell v. Granquist*, 252 F.2d 56 (9th Cir. 1958).

■ Cases pressed upon us by the taxpayer standing for the proposition that the presence of only one of the foregoing indicia of fraud, considered in isolation, is insufficient independent evidence of fraudulent intent are inapposite. It is the combination of these indicia which we conclude warranted the inference of fraud. *See Holland v. United States*, 348 U.S. 121, 139, 75 S.Ct. 127, 99 L.Ed. 150 (1954).

The judgment of the Tax Court is therefore affirmed.

Affirmed.

RONEY, Circuit Judge (specially concurring):

I concur, but on the ground that the moneys received by McGee were, and always have been, income under the *Rutkin* rationale. The facts show that McGee did not have rightful possession to money belonging to another that he diverted to his own use, the classic embezzlement reflected in *Wilcox*. The sums were paid to McGee for him to keep as his own. They constituted income under *Rutkin* whether or not *Wilcox* remained law. Therefore, I would not need *James'* overruling of *Wilcox* to support an affirmance of the deficiency assessment in this case. There is serious doubt in my mind that sums received on facts identical to *Wilcox* should be taxed as income during the years that *Wilcox* was on the books holding such not to be income. But since, in my view, the facts here clearly demonstrate taxable income different from that protected by *Wilcox*, I agree that the tax court is due to be

---

**8.** Based upon its findings of fact the Tax Court concluded that there were deficiencies in income taxes and addition to the tax due from McGee as follows:

| YEAR | INCOME TAX | ADDITION TO THE TAX |
|------|-----------|---------------------|
| 1957 | $9,368.18 | $4,684.09 |
| 1958 | 6,329.27 | 3,164.64 |
| 1959 | 4,916.23 | 2,458.12 |

| YEAR | INCOME TAX | ADDITION TO THE TAX |
|------|-----------|---------------------|
| 1960 | 5,886.94 | 2,943.47 |
| 1961 | 4,261.35 | 2,130.68 |
| 1962 | 2,353.81 | 1,176.91 |
| 1963 | 1,058.03 | 529.01 |

**9.** *Cf. C.I.R. v. Welch*, 345 F.2d 939, at 944 (5th Cir. 1965).

affirmed on the deficiency income tax assessment and that the not clearly erroneous finding of fraud lifts the statute of limitations as a bar.