JOSEPH McCOOL and PATRICIA McCOOL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McCool v. Commissioner
Docket No. 2751-79.
United States Tax Court
T.C. Memo 1984-33; 1984 Tax Ct. Memo LEXIS 640; 47 T.C.M. (CCH) 930; T.C.M. (RIA) 84033; January 17, 1984. Joseph McCool, pro se. Michael S. Adelman, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined the following deficiencies and additions to tax in petitioners' Federal income taxes: Addition to Tax
Year
Deficiency
Sec. 6653(b) [1]
1971
$267.29
$133.64
1972
2,876.25
1,438.12
1973
569.77
284.88
*641 In the notice of deficiency, respondent determined that the liability of petitioner, Patricia McCool, is limited to the 1971 and 1973 income tax deficiencies only. After concessions, the issues for decision are: (1) Whether petitioner, Joseph McCool, received income through extortion during his 1971, 1972, and 1973 taxable years; (2) whether petitioner, Joseph McCool, is liable for the fraud addition to tax under section 6653(b) for the years in issue; and (3) whether the statute of limitations bars assessment and collection of the deficiencies determined by respondent. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Joseph McCool (hereinafter petitioner) and Patricia McCool, husband and wife, resided in Dunmore, Pennsylvania, when they filed their petition in this case. They filed joint Federal income tax returns for the years in issue with the Internal Revenue Service Center at Philadelphia, Pennsylvania. Throughout the years in issue, petitioner was active in local politics. He was chairman of the Democratic Party in Dunmore Borough and he was one of nine elected members of the Dunmore, Pennsylvania School Board. During the years *642 in issue, petitioner served variously as president, vice president, and/or secretary-treasurer of the school board. As an officer of the school board, petitioner was aware that the following individuals did business with the Dunmore Borough school district (hereinafter DSD): John M. McDonald (McDonald), president of Tom Taylor, Inc.; Joseph F. Sabatella (Sabatella), proprietor of Sabatella's Sport Shop; Mario T. Chemi (Chemi), proprietor of Cetta-Parrish Music Company; and Thomas J. Ball (Ball), operator of the Scranton Maintenance Supply Company. At all relevant times, it was understood among these vendors that to do business with the DSD they would have to "deal" with the school board, that is, pay the school board a kickback of 10 percent on every transaction. This was a long-standing and common practice in the DSD. The kickbacks were generally paid in cash a few days after the vendor received his payment check from the school district for goods delivered on contract. If the 10 percent kickback was not turned over to the school board, the merchant risked losing future contracts. In April or May of 1971, petitioner specifically asked Mr. James Scanlon, Solicitor of the DSD *643 for a "piece" of his $5,200 legal fee collected in connection with work performed for the school district. Attorney Scanlon refused and suggested it was illegal to require kickbacks; petitioner then suggested, to no avail, that the payment be treated as a campaign contribution. At various times during the years in issue, petitioner had occasion to receive cash kickbacks from the following individuals: McDonald, Sabatella, Chemi, and Ball. The amounts petitioner received generally represented 10 percent of the contract price paid within a few days after the merchant received payment for goods or services delivered to the DSD. During 1971, petitioner received the following amounts of cash kickbacks from the following individuals: Approximate Date
Amounts Paid
Payor
of Payment
to Petitioner
McDonald
4/29/71
$140.00
11/18/71
959.00
Sabatella
4/29/71
450.00
6/24/71
100.00
Chemi
11/18/71
250.00
Total
$1,899.00
During 1972, petitioner received the following amounts of cash kickbacks from the following individuals: Approximate Date
Amounts Paid
Payor
of Payment
to Petitioner
McDonald
1/6/72
$471.00
2/3/72
477.00
10/19/72
195.00
Chemi
6/22/72
250.00
Ball
10/19/72
2,300.00
11/22/72
4,000.00
11/29/72
5,000.00
Total
$12,693.00
*644 In addition to the kickbacks received in 1972, petitioner was paid $1,000 in cash by Mr. William Bevelock, a former member of the school board, to arrange for the promotion of Mr. Bevelock's brother-in-law to school principal. During 1973, petitioner received the following amounts of cash kickbacks from the following individuals: Approximate Date
Amounts Paid
Payor
of Payment
to Petitioner
McDonald
11/18/73
$74.00
Ball
9/6/73
1,800.00
Total
$1,874.00
Petitioner did not maintain records of the amount, date, or payor of the kickback. Petitioner had unfettered control over the cash he collected and he failed to keep a record of how it was expended. Sometime prior to 1975, the FBI began an investigation of improprieties within the DSD. After the investigation was under-way, petitioner told Mr. Frank Hoben, a vendor doing business with the school district, that if he did not say anything to the FBI, everything would be all right. Petitioner made a similar comment to Mr. William Bevelock. On May 2, 1975, in connection with the DSD kickback scheme, the United States grand Jury for the Middle District of Pennsylvania returned a 22-count indictment *645 against petitioner. Count one charged petitioner with conspiracy to "obtain property that was not due [him] by wrongful use of fear and under color of official right." Counts 2 through 19 charged petitioner with extorting money (in violation of 18 U.S.C., sec. 1951(b)(2) (1982)) during they years in issue from various individuals, including Ball (counts 2 through 6); McDonald (counts 7 through 13); Sabatella (counts 14 through 16); and Chemi (counts 17 through 18). Counts 20 to 22 charged petitioner with tax fraud in violation of 26 U.S.C. 7206 (1976) for his 1971, 1972, and 1973 taxable years. The three counts of tax fraud were severed from trial on the conspiracy and extortion charges. Petitioner was tried by jury on counts 1 through 19 in Harrisburg, Pennsylvania. He was found guilty of counts 1 through 18. On March 24, 1976, judgment of conviction was entered against petitioner on counts 1 through 18. On April 26, 1976, petitioner pleaded nolocontendere to count 20; the two remaining counts of tax fraud were then dismissed. Petitioners' Federal income tax returns for 1971, 1972, and 1973 were prepared by McGrail, *646 Young & Co., certified public accounting firm. Petitioner failed to inform the individuals who prepared his 1971, 1972, and 1973 tax returns that he received kickbacks on business transacted with the DSD, and he failed to report any income from the kickbacks or payoffs on his returns for said years. In addition to payoffs, petitioner failed to report $83.81 of interest income earned during 1972 and $160 in insurance commissions received during 1973 on those respective returns. The following chart shows the taxable income reported on petitioners' returns, and the amounts and the payors of the unreported taxable income determined by respondent in the notice of deficiency: Amounts of Unreported Income
Payor
1971
1972
1973
McDonald
$1,194
$1,660
$50
Sabatella
550
Chemi
250
270
Ball
10,650
2,000
Bevelock
1,000
Total unreported taxable income
$1,994
$13,580
$2,050
Taxable income reported on
return
8,676
11,854
17,128
ULTIMATE FINDING OF FACT Petitioner underreported income for all the years in issue. Part of petitioner's underpayments of tax for each of the years in issue was due to fraud with the intent to evade tax within *647 the meaning of section 6653(b). OPINION We must determine whether petitioner is liable for the deficiencies and additions to tax ad determined by respondent for the years in issue. Issue I: Extortion Income
Respondent maintains that the kickbacks and payoffs that petitioner extorted during 1971, 1972, and 1973 were income when received. While petitioner admits to collecting various amounts of cash during the years in issue from McDonald, Sabatella, and Chemi, he denies accepting any cash from Ball or Bevelock. Moreover, petitioner argues that any cash he received was a "campaign contribution" and not a kickback. It is well settled law that a taxpayer who receives amounts of money under a claim of right or without restrictions as to its disposition must include such amounts in gross income. North American Oil Consolidated v. Burnet,286 U.S. 417, 424 (1932). That the amounts received under a claim of right are in the nature of kickbacks does not alter the fact that they constitute income to the recipient. Lydon v. Commissioner,351 F. 2d 539 (7th Cir. 1965), *648 affg. a Memorandum Opinion of this Court; McGee v. Commissioner,61 T.C. 249, 253 (1973), affd. 519 F. 2d 1121 (5th Cir. 1975). Petitioner did not report any income from kickbacks on his returns for any of the years in issue. At trial, petitioner argues that whatever cash payments he collected from the vendors were political contributions and not illegal kickbacks. For the reasons set forth below, we find petitioner's argument to be wholly without merit. To begin with, petitioner was convicted of extorting money from McDonald, Sabatella, Chemi, and Ball during 1971, 1972, and 1973 with the unlawful use of fear and under color of official right. In addition, Bevelock and Chemi specifically testified at trial that the cash payments were not political contributions, but were kickbacks on business transacted with DSD, and Sabatella, McDonald, and Ball all referred to the cash payments as kickbacks. Moreover, these payments were not made voluntarily; vendors were coerced to kickback 10 percent of the contract price or risk losing DSD's future business. Accordingly, we are convinced that the monies petitioner received during the years in issue were *649 illegal kickbacks and not political contributions. The amount of the kickbacks petitioner received from individual payors is fully set out in our findings of fact and need not be repeated herein. Suffice it to say that McDonald, Sabatella, Chemi, Ball, and Bevelock each testified about the background and specifics relating to each cash kickback or payoff made to petitioner. Petitioner's insistent denial of receipt of Ball's or Bevelock's payments totally belies the record. Moreover, after observing the character and demeanor of petitioner at trial, we find his self-serving testimony to be uncredible. Consequently, we find that petitioner did receive kickbacks and payoffs during 1971, 1972, and 1973 as set forth in our findings of fact. Issues II and III: Additions to Tax and the Statute of Limitations.
Respondent determined that part of petitioner's underpayment of tax for each of the years in issue was due to fraud and, therefore, claims that section 6653(b) fraud addition to tax should be imposed. Petitioner denies that any underpayment of tax was due to fraud. For the reasons set forth below, we hold for respondent on this issue. *650 The existence of fraud is question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion, 578 F. 2d 1383 (8th Cir. 1978). Respondent has the burden of proving fraud for each year that it is alleged by clear and convincing evidence. Sec. 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure; Cefalu v. Commissioner,276 F. 2d 122, 128 (5th Cir. 1960); Beaver v. Commissioner,55 T.C. 85, 92 (1970). The taxpayer must be shown to have acted with a specific intent to evade a tax believed to be owing. Mitchell v. Commissioner,118 F. 2d 308, 310 (5th Cir. 1941); Estate of Temple v. Commissioner,67 T.C. 143, 159 (1976). Since direct evidence of fraud is seldom available, respondent may meet his burden of proof through circumstantial evidence. Nicholas v. Commissioner,70 T.C. 1057, 1065 (1978). The consistent failure to report cash kickbacks is evidence of an attempt to conceal that income with the intent to evade tax. *651 McGee v. Commissioner,supra at 261. [2]
We have found that the petitioner consistently failed to report the cash kickbacks in gross income during the years in issue. We base this finding on the substantial evidence contained in the record, including petitioner's conviction of extortion in which he was found guilty of obtaining "property that was not due him in the form of money [in varying amounts from various individuals] * * * induced by wrongful use of fear and under the color of official right" during *652 each of the years in issue. The record clearly establishes that petitioner used his position and influence to extort money from persons doing business with the DSD. Petitioner's intent to evade tax is evidenced by the fact that petitioner was aware of the illegality of his actions; in 1971, he was advised by DSD's solicitor that a "piece" of his legal fee was illegal. Despite this warning, petitioner continued to collect cash kickbacks from vendors doing business with DSD during each year in issue. Finally, petitioner attempted to impede an FBI investigation into the kickback scheme by informing two individuals that if they did not say anything to the FBI agents, everything would be all right. Further, petitioner had unfettered control over the cash he received, and spent the money as he pleased. Petitioner's consistent failure to advise his income tax preparers of his extortion income demonstrates fraudulent intent to omit the income on his tax returns. McGee v. Commissioner,supra at 261. [3] We conclude from the record as a whole that respondent has carried his burden of proving that part of petitioner's underpayment for each year in issue was due to *653 fraud. Accordingly, we hold that respondent has established that petitioner is liable for the fraud addition to tax for each of the years in issue. Having found that petitioner filed false and fraudulent returns with intent to evade tax for each year in issue, respondent's notice of deficiency clearly was not barred by the statute of limitations. See section 6501(c)(1) and (2). To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
2. Accord Grancich v. Commissioner,T.C. Memo. 1978-92, affd. 649 F. 2d 867 (9th Cir. 1981), whose facts are quite similar to the instant case. In Grancich↩ the taxpayer extorted money from individuals operating as meat vendors. Those individuals feared that if they did not make the payments they would lose accounts. Also, the taxpayer, like petitioner herein, was convicted of extortion. In finding fraud, this Court stated "The method of collection, the substantial amounts received and not reported, and the intimidation applied by petitioners are, taken as a whole, clear and convincing proof of fraudulent intent."
3. See note 2, supra.↩