BEDROS TAVLIAN AND ELIZABETH TAVLIAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Tavlian v. Commissioner
Docket Nos. 23241-89, 15823-90
United States Tax Court
T.C. Memo 1992-600; 1992 Tax Ct. Memo LEXIS 621; 64 T.C.M. (CCH) 1044; October 7, 1992, Filed *621 Decisions will be entered under Rule 155. For Elizabeth Tavlian and Bedros Tavlian: pro se. For Respondent: Michael S. Noble. GERBER
GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent, by means of two notices of deficiency, determined that petitioners had deficiencies in Federal income tax and additions to tax as follows: Additions to Tax
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6653(b)(1)(A)
6653(b)(1)(B)
6661(a)
6663(a)
1987
$ 41,914
$ 31,436
[1] $ 10,478
--    1988
78,719
59,039
[1] 19,680
--    1989
101,891
--   --
--   $ 76,148
All section references, unless otherwise indicated, are to the Internal Revenue Code as amended and in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. By way of amendments to answer, respondent sought increased deficiencies and additions to tax against petitioners for 1987, 1988, and 1989. In the amended *622 answers, respondent asserted that petitioners are liable for the following increased deficiencies and additions to tax: Additions to Tax
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6653(b)(1)(A)
6653(b)(1)(B)
6661(a)
6663(a)
1987
$ 71,425
$ 53,569
[1] $ 25,261
--   1988
166,649
124,987
[1] 41,662
--   1989
112,922
--  --
-- $ 84,692
The issues for consideration are: (1) Whether petitioner Elizabeth Tavlian received unreported taxable income from her immigration services business for 1987, 1988, and 1989; (2) whether petitioner Elizabeth Tavlian is entitled to deductions for business expenses under section 162 for 1987, 1988, and 1989; (3) whether petitioner Elizabeth Tavlian is liable for additions to tax for fraud under section 6653(b) for 1987 and 1988 and section 6663(a) for 1989; and (4) whether petitioner Elizabeth Tavlian is liable for additions to tax for substantial understatement under section 6661(a), for 1987 *623 and 1988. FINDINGS OF FACT The parties' stipulated exhibits are incorporated by this reference. At the time they filed their petitions herein, petitioners Bedros and Elizabeth Tavlian resided in Los Angeles, California. Petitioners filed joint Federal individual income tax returns for 1987, 1988, and 1989. During the years in issue, petitioner Bedros Tavlian owned and operated a grocery store business, under the name of Tavlian Grocery, in Los Angeles, California. Petitioner Elizabeth Tavlian operated an immigration services business. Mrs. Tavlian maintained her business offices in Los Angeles, California, in the home of a friend. Although she operated this business, she reported that she was a "home maker" on the joint Federal income tax returns. Mrs. Tavlian represented herself to be an "Immigration Representative, International Attorney, licensed by Warsaw in Poland". Mrs. Tavlian's clients came to her for assistance in procuring visa extensions, work permits, and filing applications for permanent resident status and U.S. citizenship. Mrs. Tavlian and her employees also taught preparatory classes for citizenship examinations. Mrs. Tavlian operated her immigration services *624 business for a number of years prior to the years in issue. In 1980, Mrs. Tavlian pled guilty to, and was convicted of, three counts of violating 18 U.S.C. section 1426(b) (1988) concerning the sale of false alien registration cards. She was sentenced to 5 years imprisonment, which was suspended, and she was placed on probation for 5 years. Mrs. Tavlian has employed several different secretaries in the operation of her business. Elizabeth Del Rosario, who is fluent in English, Tagalog, and German and received training as an accountant, was employed as Mrs. Tavlian's secretary. Ms. Del Rosario met Mrs. Tavlian in 1989 when she sought assistance from Mrs. Tavlian in obtaining permanent resident status. Upon learning that Ms. Del Rosario's aunt was a U.S. citizen, Mrs. Tavlian advised that citizenship should first be obtained for Ms. Del Rosario's mother. Once her mother became a citizen, Mrs. Tavlian explained, Ms. Del Rosario could file an application for permanent resident status. During this period, Ms. Del Rosario was to obtain a work permit. Mrs. Tavlian did not quote a fee for services to Ms. Del Rosario, but instead offered Ms. Del Rosario *625 the position as Mrs. Tavlian's secretary. Ms. Del Rosario's mother subsequently paid Mrs. Tavlian an $ 1,800 fee for her citizenship processing. Elizabeth Del Rosario began working for Mrs. Tavlian in February 1989. Ms. Del Rosario's duties included serving as a receptionist, making appointments, keeping a calendar of Mrs. Tavlian's scheduled meetings, and typing and preparing various immigration forms. Mrs. Tavlian's private office was located in a separate room, and Ms. Del Rosario worked at a desk outside of Mrs. Tavlian's office. Clients usually met with Mrs. Tavlian in her private office. Mrs. Tavlian determined the amount of fees for each client. Typically, she quoted her fee to a client during their first meeting. The fees varied and were determined on a case-by-case basis. Mrs. Tavlian frequently allowed clients to pay the fee in installments. Usually she required an initial deposit, which clients paid either by cash, check, or money order. On numerous occasions, clients would remit payment to Mrs. Tavlian rather than Ms. Del Rosario. Mrs. Tavlian maintained ledgers in which she recorded the client's name, the fee she had quoted, and the client's deposits and payments. *626 The quoted fee was usually the first entry under the client's name and was recorded as a balance owed by the client. Deposits and subsequent payments would, at times, be recorded below this initial entry of the fee the client had been charged. Mrs. Tavlian did not record all of her clients' payments. On occasion, the remaining balance owed by the client would be reflected alongside or below a payment entry. As of May 1989, Mrs. Tavlian maintained 12 individual ledger books in her private office. The 12 ledger books had varying colored covers. Each client's account would be recorded on a particular page in a ledger. The accounts were not kept in alphabetical order by the client's name. Instead, clients were advised of the color and page number of the ledger in which she recorded their account. Clients were instructed when making payments to specify the page number and color of the ledger in which their account appeared. Occasionally, clients paid monthly installments, filing fees, and other miscellaneous charges to Ms. Del Rosario. Ms. Del Rosario would record the payments she received into the ledgers pursuant to Mrs. Tavlian's direction. Upon request, Ms. Del Rosario *627 would issue a receipt to clients for cash payments she had received. Ms. Del Rosario turned over all such payments to Mrs. Tavlian. During the years in issue, Mrs. Tavlian had many clients, including Fe Jocson and Emilita Lacson. Fe Jocson met Mrs. Tavlian in April 1988. Mrs. Jocson sought Mrs. Tavlian's assistance in obtaining resident status for herself. Mrs. Tavlian quoted an $ 8,500 fee to Mrs. Jocson. Mrs. Jocson remitted a $ 4,250 cash downpayment during April 1988. Subsequently, Mrs. Jocson made the following cash payments to Mrs. Tavlian: Date
Payment
May 20, 1988
$ 1,250
June 24, 1988
1,000
Oct. 7, 1988
500
Nov. 22, 1988
500
Apr. 28, 1989
400
Total
3,650
Mrs. Jocson made no further payments. Mrs. Jocson did not receive receipts for the payments. Mrs. Jocson was advised that her account would be recorded on page 341 of the brown ledger. Emilita Lacson met Mrs. Tavlian in October 1988 and sought Mrs. Tavlian's assistance in obtaining work permits for Mrs. Lacson's two daughters. Mrs. Tavlian quoted to Mrs. Lacson a $ 7,000 fee for each daughter's permit. When Mrs. Lacson informed her that she did not have $ 14,000, Mrs. Tavlian agreed to a *628 $ 2,000 downpayment, with the balance paid in monthly installments. Emilita Lacson paid $ 2,000 in October 1988 and made eight monthly payments of $ 250 each to Mrs. Tavlian. Mrs. Lacson paid by check and she was not provided with a receipt. Subsequently, Mrs. Tavlian requested Mrs. Lacson to make future payments by money order. Thereafter, Mrs. Lacson ceased making payments to Mrs. Tavlian. Within a few weeks of the $ 2,000 downpayment, Mrs. Tavlian provided work permits purportedly issued by the Immigration and Naturalization Service (INS). On May 19, 1989, Mrs. Tavlian was arrested as a result of an undercover criminal investigation conducted by INS agents. [1] The INS agents received the assistance of two private individuals who served as undercover operatives. Mrs. Tavlian's meetings with the operatives were taped. *629 In their initial meeting with Mrs. Tavlian on May 17, 1989, the undercover operatives represented that they recently had arrived in the United States. They requested assistance and asked Mrs. Tavlian to explain applicable immigration procedures. They were advised by Mrs. Tavlian that resident status applications would take approximately 2 years. During the 2-year period, Mrs. Tavlian was to provide work permits to enable them to work in the United States. Mrs. Tavlian quoted a $ 9,000 fee to the operatives. During their first meeting with Mrs. Tavlian, the undercover operatives paid $ 4,000 in marked bills. During their second and final meeting with Mrs. Tavlian on May 19, 1989, the operatives paid an additional $ 3,000 in marked bills. The INS agents obtained warrants for Mrs. Tavlian's arrest and to search her business premises. These warrants were executed during the night of May 19, 1989. The INS agents' search uncovered originals of work permits for thousands of individuals. A random check of 500 permits revealed that most of them had not been issued by the INS. The false work permits appeared to bear INS numbers, but had not actually been issued by the INS to the *630 document holders. The false documents also bore what appeared to be an official INS stamp and purportedly were signed by an INS employee. During the search, INS agents also seized approximately $ 22,000 in cash and checks from a desk drawer in Mrs. Tavlian's private office. Included in the $ 22,000 were the marked bills from the undercover operatives. The 12 ledger books Mrs. Tavlian maintained also were seized. Mrs. Tavlian's 12 ledger books reflected that she received the following total of payments from clients in her immigration services business: Year
Total Payments
1987
$ 176,156
1988
568,443
1989
376,789
The accounts of Mrs. Fe Jocson and Mrs. Lacson were reflected in the seized ledgers. Only part of the payments by Mrs. Lacson were recorded in the ledger. Following her arrest on May 19, 1989, Mrs. Tavlian was indicted and prosecuted. She pled guilty to and was convicted of two counts of violating of 18 U.S.C. section 1546(a) (1988) for possession of false employment authorization documents. Mrs. Tavlian was ordered to pay a $ 25,000 fine and was sentenced to time already served with 3 years' probation. During the years in *631 issue, Mrs. Tavlian deposited approximately $ 360,000 into her bank accounts. During the years in issue, more than $ 40,000 in checks were deposited into Bedros Tavlian's business bank account. Most of the $ 40,000 deposited into Mr. Tavlian's business account were from Mrs. Tavlian's immigration activity. Mrs. Tavlian was named as payee on substantially all of the $ 40,000 in checks. Some of the checks were made payable to "Atty Elizabeth Tavlian". Substantially all of the checks were issued by individuals who were listed in the 12 ledger books. Some of the checks bore notations referring to a specific ledger. On their 1987, 1988, and 1989 Federal income tax returns, petitioners reported the following items of taxable income: 1987
1988
1989
Interest income
$ 3,208
$ 2,548
$ 4,410
Refunds of State and
64
--  137
local taxes
Business income
22,493
18,468
4,617
California lottery
629
--  --  winnings
Total taxable income
26,394
21,016
9,164
All of the business income reported on petitioners' 1987, 1988, and 1989 returns was from the Tavlian Grocery, the business operated by Mr. Tavlian. Mr. Tavlian's business income from the Tavlian *632 Grocery for 1987, 1988, and 1989 was computed on a Schedule C, Form 1040 (Profit or Loss From Business or Profession), attached to the respective returns. No income from Mrs. Tavlian's immigration services business was reported on petitioners' 1987, 1988, and 1989 returns. No Schedule C, Form 1040 (Profit or Loss From Business or Profession), concerning Mrs. Tavlian's business was attached to the respective returns. Each return reflected that Mrs. Tavlian was a homemaker. The 1987 and 1988 returns were prepared by an accountant. The 1989 return was prepared by petitioners' attorney, Jeffrey A. Sherman. The following statement was attached to the 1989 return: Taxpayer Elizabeth Tavlian may have derived other income for services rendered in connection with the preparation of immigration forms. However, in light of the seizure by the * * * [INS] of all of the taxpayer's records, the taxpayer is unable to ascertain the amount of various items of income and expenses at this time. However, upon receipt of said records from the * * * [INS] taxpayers shall file an amended return reflecting all such items of income and expenditure. The 1987, 1988, and 1989 returns were timely filed *633 by petitioners. In the notices of deficiency, respondent determined that petitioners had unreported taxable income from fees earned in the preparation of immigration papers. In their amended petition, petitioners asserted that Mr. Tavlian qualified for relief as an innocent spouse under section 6013(e). In their amended reply, petitioners further alleged that they were not liable for additions to tax for fraud because Mrs. Tavlian, due to certain mental incapacities, could not have formulated the specific intent necessary to support a finding of fraud. The parties have settled all issues with respect to petitioner Bedros Tavlian, including the innocent spouse issue raised in the amended petition. Further, Mrs. Tavlian explained that the mental incapacity defense was improvised by her attorney and that no such defense is being asserted by petitioners. Prior to trial, Mrs. Tavlian submitted documents to respondent's counsel, which she claimed were copies of receipts issued to immigration clients. The documents were not contemporaneous records. In a number of instances, the "receipts" were not issued to the clients or reflected only a small percentage of the payment made to Mrs. *634 Tavlian. For instance, "receipts" numbered 521, 604, and 6340 purportedly show that on October 4, 1988, November 16, 1988, and January 24, 1989, Emilita Lacson made respective payments of $ 20, $ 2.50, and $ 2,50 to Mrs. Tavlian. Mrs. Lacson testified that she paid $ 2,000, $ 250, and $ 250 on those dates. Similarly, the following table demonstrates other instances of misstated receipts: Payor
Date
Check Amount
Ledger Amount
"Receipt" Amount
Corvacho
7/21/88
$ 300
$ 300
$ 30
Lim
12/29/88
2,000
2,000
20
Manikan
8/3/88
270
270
27
Marte
12/17/87
2,200
2,200
22
OPINION Unreported Taxable Income and Business Expenses
The increased deficiencies are based on the payments recorded in Mrs. Tavlian's ledger books. Mrs. Tavlian contends that the entries in the ledger books were altered and that she only received a fraction of the payments. Mrs. Tavlian alleges that she is the victim of a conspiracy by her employee Elizabeth Del Rosario, the arresting INS agent, and various other individuals. Although Mrs. Tavlian concedes that she operated a business, she asserts that she earned no profit. Alternatively, if the Court determines any unreported income, *635 Mrs. Tavlian contends that she is entitled to deductions for business expenses. Mrs. Tavlian has failed to offer any credible evidence in support of her contentions. Although she alleged that certain individuals witnessed alteration of the ledgers by Elizabeth Del Rosario, no witnesses were offered in support of this allegation. While Ms. Del Rosario testified that she made some entries in the ledgers to record payments from Mrs. Tavlian's clients, Ms. Del Rosario stated that she made the entries at Mrs. Tavlian's direction. Respondent offered the testimony of two clients of Mrs. Tavlian -- Mrs. Jocson and Mrs. Lacson. These witnesses confirmed that they had made the payments reflected in the ledgers to Mrs. Tavlian. The record also contains checks payable to Mrs. Tavlian which were deposited into her bank account. In a number of instances, the check amounts correspond to the payment amounts reflected in the ledgers. We find Mrs. Tavlian's testimony to be untruthful. Her testimony contained many contradictions, inconsistencies, and unfounded allegations. At trial, Mrs. Tavlian attempted to offer documents as contemporaneous from the years under consideration. Those documents *636 had been fabricated or constructed for trial and were not in existence during the years under consideration. Mrs. Tavlian offered as contemporaneous business records various summary sheets which purportedly summarized the payments received by Mrs. Tavlian over 2-week periods. After questioning of Mrs. Tavlian, the Court refused to admit the "payment summary sheets" into evidence because they were not contemporaneous records as Mrs. Tavlian represented. [2]
*637 Other factual assertions of Mrs. Tavlian also were obviously incredible and unworthy of belief. Mrs. Tavlian asserted that she received only nominal fees from her clients. She claimed that the large deposits made to her bank accounts were attributable either to inherited wealth brought into the United States from Poland or Social Security payments received by her children. When questioned about some larger checks which she deposited into her bank account, Mrs. Tavlian claimed that she had accepted and cashed the checks to assist the issuers in converting their foreign currency into dollars. We find that Mrs. Tavlian had unreported income in the amounts of $ 176,156, $ 568,443, and $ 376,789 for 1987, 1988, and 1989, respectively. On brief, Mrs. Tavlian asserts that she is entitled to substantial business expenses. At trial, however, she generally failed to offer credible evidence substantiating the alleged expenses. Mrs. Tavlian bears and has failed to carry her burden of proof. Rule 142(a). Mrs. Tavlian, however, did have at least one secretary during the period from 1987 through May 1989. In her testimony, Elizabeth Del Rosario stated that she received a salary from Mrs. *638 Tavlian. We have also taken into account other miscellaneous business expenses which Mrs. Tavlian may have incurred. Bearing heavily against Mrs. Tavlian, because this inexactitude is of her own making, we find that Mrs. Tavlian is entitled to deductions under section 162 for 1987, 1988, and 1989 in the respective amounts of $ 12,000, $ 12,000, and $ 5,000. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). Additions to Tax
Respondent determined that Mrs. Tavlian was liable for additions to tax for fraud under section 6653(b) for 1987 and 1988 and under section 6663 for 1989. Respondent has the burden of proving, by clear and convincing evidence, that some part of the underpayment for each year in issue was due to fraud. Secs. 6653(b)(2), 6663(b), 7454(a); Rule 142(b). Consequently, respondent must establish: (1) An underpayment by the taxpayer, and (2) that some part of the underpayment is due to fraud. King's Court Mobile Home Park, Inc. v. Commissioner, 98 T.C. 511, 515, 516 (1992); Truesdell v. Commissioner, 89 T.C. 1280, 1301 (1987). Fraud is an intentional wrongdoing *639 by the taxpayer with the specific purpose of evading a tax known or believed to be owing. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); McGee v. Commissioner, 61 T.C. 249, 256 (1973), affd. 519 F.2d 1121 (5th Cir. 1975). Respondent's burden of proving fraud is met if it is shown that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Stoltzfus v. United States, supra at 1004; Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). The existence of fraud is a question of fact to be resolved from the entire record. DiLeo v. Commissioner, 96 T.C. 858, 874 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). The taxpayer's entire course of conduct can be indicative of fraud. Stone v. Commissioner, 56 T.C. 213, 224 (1971). *640 Because fraud can rarely be established by direct proof of the taxpayer's intention, fraud may be proved by circumstantial evidence. DiLeo v. Commissioner, supra at 874-875; Rowlee v. Commissioner, supra at 1123. In Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601, the Ninth Circuit Court of Appeals set forth a nonexclusive list of circumstantial evidence which may give rise to a finding of fraudulent intent. Such "badges of fraud" would include: (1) Understatement of income, (2) maintenance of inadequate records, (3) failure to file income tax returns, (4) implausible or inconsistent explanations of behavior, (5) concealment of assets, and (6) failure to cooperate with tax authorities. The Ninth Circuit in Bradford also stated that the existence of the following facts supported this Court's finding of fraudulent intent: (1) The taxpayer's engaging in an illegal activity, (2) his attempt to conceal such activity, (3) his dealing in cash, and (4) his failing to make estimated tax payments. On the record presented, *641 we conclude that respondent has shown by clear and convincing evidence that Mrs. Tavlian is liable for the additions to tax for fraud for 1987 and 1988, but not for 1989. Mrs. Tavlian failed to report any taxable income from her immigration services business on her returns. As we have previously determined, Mrs. Tavlian earned hundreds of thousands of dollars from the business during each of the years in issue. Despite maintaining ledgers which reflected her receipt of this taxable income, Mrs. Tavlian failed to report the taxable income from the business on her 1987 and 1988 returns. We do not believe Mrs. Tavlian's claim that the accountant who prepared petitioners' 1987 and 1988 returns failed to include the income from the immigration services business. Mrs. Tavlian also fabricated hundreds of fictitious receipts in an attempt to conceal that she had earned large amounts of unreported income. In attempting to explain the large deposits into her bank accounts, Mrs. Tavlian offered dubious explanations that the money was attributable to inherited wealth or from Social Security payments. Mrs. Tavlian has failed to establish that any portion of the respective underpayments *642 for 1987 and 1988 was not attributable to fraud. Sec. 6653(b)(2). We find that under section 6653(b)(1) Mrs. Tavlian is liable for additions to tax for fraud equal to 75 percent of the underpayments for 1987 and 1988. We further find that Mrs. Tavlian is liable under section 6653(b)(1)(B) for an addition to tax for fraud equal to 50 percent of the interest on the underpayment for 1987. Although the parties did not argue this aspect, we hold that Mrs. Tavlian is not liable for a section 6653(b)(1)(B) addition to tax for fraud for 1988. The Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, sec. 1015(b)(2)(B), 102 Stat. 3569, repealed the 50-percent-of-the-interest addition to tax on the portion of the underpayment due to fraud. The change was effective for returns the due date for which (determined without regard to extensions) is after December 31, 1988. Under section 6072(a), an individual's return for a calendar year is due on or before April 15 of the following year. Thus, petitioners' 1988 return was due on April 15, 1989. Mrs. Tavlian is therefore not liable for a section 6653(b)(1)(B) addition to tax for 1988. Concerning the 1989 deficiency, it is based *643 on the payments recorded in Mrs. Tavlian's ledgers which the INS seized. In a statement attached to their timely filed 1989 return, petitioners disclosed that Mrs. Tavlian might have additional taxable income from her immigration services business. The statement also indicated that the INS had seized all of Mrs. Tavlian's business records and that any unreported taxable income could be determined from the seized records. Mrs. Tavlian's counsel (a tax attorney who had initially represented her in this case) prepared the 1989 return. We conclude that respondent has failed, under section 6663, to prove by clear and convincing evidence that a portion of the underpayment for 1989 was due to fraud. Sec. 7454(a); Rule 142(b). Section 6661 provides for an addition to tax for substantial understatement of income tax, equal to 25 percent of the amount of any underpayment attributable to such understatement for the taxable year. To be considered substantial, the understatement must exceed the greater of $ 5,000 or 10 percent of the tax required to be shown on the return. Sec. 6661(b)(1)(A). The amount of the understatement is reduced by the portion of the understatement attributable *644 to any non-tax-shelter item for which there was either substantial authority for the taxpayer's return position or adequate disclosure on the return. Sec. 6661(b)(2)(B). Mrs. Tavlian understated her tax for 1987 and 1988, and the respective understatements were substantial. She has not asserted that the understatements should be reduced under section 6661(b)(2)(B). We find that Mrs. Tavlian is liable for additions to tax under section 6661 for 1987 and 1988 due to her failure to carry her burden of showing respondent's determination to be in error. Decisions will be entered under Rule 155. Footnotes
1. 50 percent of the interest due on the deficiency.↩
1. 50 percent of the interest due on the deficiency.↩
1. At trial, an Immigration and Naturalization Service (INS) agent testified that the investigation was commenced after various illegal aliens were detained and were found to possess work permits. When questioned by the agent, these individuals stated that the immigration-related documents had been obtained from Mrs. Tavlian.↩
2. Contrary to the representations made in the statement attached to petitioners' 1989 return, Mrs. Tavlian claimed the summary sheets were not seized by the INS because they had been in the possession of the brother of one of Mrs. Tavlian's secretaries. Mrs. Tavlian stated the secretary's brother was in the process of compiling the summary sheet for the 2-week period prior to the time of Mrs. Tavlian's arrest. She offered no convincing explanation for her need for separate summary sheets in addition to the 12 ledgers or concerning why the summary sheets were in her secretary's brother's possession at the time of Mrs. Tavlian's arrest. Moreover, Mrs. Tavlian also failed to offer any credible explanation as to why petitioners failed to report any income from Mrs. Tavlian's immigration services business on their returns if Mrs. Tavlian had the "payment summary sheets". Mrs. Tavlian claimed she had made the sheets available to the accountant who prepared petitioners' 1987 and 1988 returns, but that the accountant failed to include the income from Mrs. Tavlian's immigration services business.↩