T.C. Memo. 1996-482


UNITED STATES TAX COURT


JACOB AND YEHIELLA KALO, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 20479-94.                    Filed October 28, 1996.


Robert W. Siegel, for petitioners.

Timothy S. Murphy, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge:  Respondent determined the following
deficiency in, additions to, and penalty on petitioners' Federal
income taxes:

| | | Additions to Tax | | | Penalty |
| Year | Deficiency | Sec. 6653(b)(1) | Sec. 6653(b)(1)(A) | Sec. 6653(b)(1)(B) | Sec. 6663 |
|------|-----------|-----------------|--------------------|--------------------|-----------|
| 1986 | $29,316 | --- | $21,987 | [1] | --- |
| 1987 | --- | --- | 16,399 | [1] | --- |
| 1988 | --- | $17,996 | --- | --- | --- |

| 1989 | --- | --- | --- | --- | $22,664 |

[1]50 percent of the statutory interest applicable on $29,316 and $21,865 for 1986 and 1987, respectively, from the due date of the return to the date of assessment of the tax or, if earlier, the date of the payment.

All section references are to the Internal Revenue Code in effect for the years in issue. All Rule references, unless otherwise indicated, are to the Tax Court Rules of Practice and Procedure.

Respondent contends that Dr. Kalo (petitioner) fraudulently and with the intent to evade taxes understated his interest income from foreign bank accounts for the 1986, 1987, 1988, and 1989 tax years. After concessions,[1] the issues for decision are whether petitioner is liable for additions to tax pursuant to section 6653(b)(1)(A) and (B) for the 1986 and 1987 tax years and section 6653(b)(1) for the 1988 tax year and for a penalty pursuant to section 6663 for the 1989 tax year.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners resided in West Bloomfield, Michigan, at the time they filed their petition.

---

[1] Respondent concedes that Yehiella Kalo is not liable for the additions to tax and penalty as determined in the statutory notice of deficiency. Respondent also concedes the deficiency for the 1986 tax year. Petitioners filed an amended tax return prior to the issuance of the notice of deficiency reflecting an underpayment of $29,316 for the 1986 tax year.

Petitioners timely filed joint tax returns for all years in issue. On or about November 26, 1990, petitioners filed Forms 1040X (Amended U.S. Individual Income Tax Return) for the taxable years 1986, 1987, 1988, and 1989. The purpose of these amended returns was to report interest income from several foreign bank accounts that had previously been unreported. On their original returns, petitioners failed to report a total of $309,320 in interest income earned from foreign bank accounts over a 4-year period.

Petitioner Jacob Kalo was a medical doctor with a specialty in obstetrics and gynecology and a subspecialty in laser surgery. Petitioner owned and operated five clinics or offices, including the East Gyn Medical Clinic (the clinic), through his professional corporation during the years in issue. During the taxable years 1986 through 1989, petitioner did not maintain malpractice insurance coverage.

During 1990 and 1991, petitioner was under investigation by the Internal Revenue Service Criminal Investigation Division (CID) for possible Federal income tax violations. On April 18, 1990, petitioner was interviewed by special agents with the CID. On September 9, 1992, petitioner was charged by the United States Attorney for the Eastern District of Michigan with four counts of willful failure to disclose that he had interests in foreign bank accounts in violation of section 7203. On January 29, 1993,

petitioner, pursuant to a Rule 11[2] plea agreement, pleaded guilty to one count of violating section 7203 for the 1987 tax year for having willfully failed to disclose on his 1987 tax return that he had interests in foreign bank accounts.

During the interview with special agents of the CID, when asked about the existence of foreign bank accounts, petitioner failed to disclose that he had bank accounts in Canada.  When specifically questioned about bank accounts in Canada, petitioner stated that he thought he had an account with his father and that his father's money was in the account.  Petitioner stated that he did not deal with this account as his father handled all of the banking transactions for this account.  During the years 1986 through 1989, petitioner did in fact have an account at the Royal Bank of Canada which earned $255,216 in interest.  During 1986 and 1987, petitioner also had an account at Canada Trust which earned $836 in interest, and in 1989 had a joint account with his father at the Bank of Montreal that earned $37 in interest.  During 1986, petitioner also had a London bank account and a Swiss bank account on which he earned interest of $23,910 and $10,415 respectively.

During the years 1985 through 1988, petitioner made numerous cash deposits into bank accounts in Canada, seven of which exceeded $10,000.  Petitioner deposited over $230,000 in cash

---

[2]  Fed. R. Crim. P. 11.

into the Royal Bank of Canada during these years. By 1989 petitioner had approximately $1 million deposited with the Royal Bank of Canada and over $3 million in all Canadian accounts combined.

After the initiation of the criminal investigation by the IRS, petitioner removed business records from the East Gyn Medical Clinic. Petitioner falsely told special agents on August 23, 1990, that he never removed records indicating cash payments received at the clinic. Petitioner instructed an employee, Minnie Malone, that if anyone asked her about the records to state that the State of Michigan took them during a Medicaid audit.

During the April 18, 1990, interview of petitioner by special agents, Dr. Kalo stated that records used to record cash payments for the clinic had been seized by the State of Michigan during a Medicaid audit and were never returned. In a subsequent interview by special agents, petitioner stated that the records had been returned by the State of Michigan. These records, along with records from petitioner's other clinics, were summonsed by Special Agent Kevin Boudreau. The summonses specifically requested any records which reflected cash receipts. At no time during the CID investigation did petitioner produce any record reflecting the cash receipts received by the clinic for the years 1986 through 1989.

In an interview with special agents on August 23, 1990, petitioner stated that the East Gyn Medical Clinic never had a day where the cash receipts for a single day were more than $2,000. Petitioner stated that the clinic received very little cash. On the following day, petitioner asked two employees, Minnie Malone and Marlene Parsons, to write letters on his behalf to the IRS stating that the amount of cash received daily at the clinic ranged from $40 to $800. Both employees refused to write the letters as proposed by petitioner because the dollar amounts he asked them to insert were false. During the August 23, 1990, interview, petitioner told special agents that he believed that the interest income was not taxable until withdrawn from the bank. Petitioner then told the agents that his accountant had told him that the interest was not taxable until withdrawn. When asked for the accountant's name, petitioner's attorney interrupted and stated that it was not the accountant but that Dr. Kalo just heard or knew of it from someone.

Arthur Sweet was petitioner's tax return preparer. Mr. Sweet was a certified public accountant since 1952. Petitioner consulted with Mr. Sweet in reference to his tax returns. Petitioner freely discussed matters with Mr. Sweet. Petitioner also called Mr. Sweet and inquired how the changes to the tax law in 1986 would affect him. Petitioner never advised Mr. Sweet that he had bank accounts in Canada, or in other foreign countries, other than a bank account in Israel, which was

disclosed on petitioners' 1988 and 1989 tax returns. In preparing petitioners' tax returns for the years 1986, 1987, 1988, and 1989, Mr. Sweet specifically asked whether petitioner had any foreign bank accounts. Mr. Sweet never told petitioner that the interest earned from Canadian accounts is not taxable until it is withdrawn.

John Glancey is a stockbroker and financial adviser who provided services for petitioner for approximately 12 years, including the period from 1986 through 1990. Over this time period, Mr. Glancey had significant dealings with petitioner, which included discussions involving foreign interest rates and foreign investments. Mr. Glancey found Dr. Kalo to have a better than average knowledge about these types of investments. Petitioner did not inform Mr. Glancey that he had an interest in foreign bank accounts.

In the August 23, 1990, interview, petitioner told special agents that he was told by an unnamed bank official at an unnamed Canadian bank that he did not have to pay taxes. It is not the policy of the Royal Bank of Canada to give advice to a nonresident about the taxability of the interest for United States tax purposes.

OPINION

The addition to tax in the case of fraud is a civil sanction provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of

investigation and the loss resulting from a taxpayer's fraud. Helvering v. Mitchell, 303 U.S. 391, 401 (1938). Respondent has the burden of proving, by clear and convincing evidence, an underpayment for each year and that some part of the underpayment was due to fraud. Sec. 7454(a); Rule 142(b). To satisfy her burden of proof, respondent must show two things: (1) An underpayment exists; and (2) the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Parks v. Commissioner, 94 T.C. 654, 660-661 (1990). The mere failure to report income, however, is not sufficient to establish fraud. Switzer v. Commissioner, 20 T.C. 759, 765 (1953). If respondent establishes that any portion of the underpayment is attributable to fraud, the entire underpayment is treated as attributable to fraud and subjected to an addition to tax or penalty, except with respect to any portion of the underpayment that the taxpayer establishes is not attributable to fraud. Sec. 6653(b)(2) for 1986 through 1988 and sec. 6663(b) for 1989.

Fraud is intentional wrongdoing on the part of the taxpayer with the specific purpose to evade a tax believed to be owing. McGee v. Commissioner, 61 T.C. 249, 256 (1973), affd. 519 F.2d 1121 (5th Cir. 1975). The existence of fraud is a question of fact to be resolved from the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Respondent must meet her

burden through affirmative evidence because fraud is never imputed or presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). A taxpayer's entire course of conduct can be indicative of fraud. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, 53 T.C. 96, 105-106 (1969). Furthermore, a taxpayer's fraudulent original return is not purged by the filing of a subsequent amended return. Badaracco v. Commissioner, 464 U.S. 386, 394 (1984).

A. Underpayment of Tax

Petitioners admitted in their amended returns that they had underreported, in their original returns, interest income from foreign banks for each year in issue. Although the filing of those amended returns is not an admission of fraudulent intent, it is an admission of an underpayment of tax for each of those years. See id. at 399.

B. Fraudulent Intent

Next, respondent must prove that a portion of such underpayment for each taxable year was due to fraud. Professional Servs. v. Commissioner, 79 T.C. 888, 930 (1982). Fraud may be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971).

Over the years, courts have developed a nonexclusive list of factors that demonstrate fraudulent intent. These badges of fraud include: (1) Understating income, (2) maintaining inadequate records, (3) failing to file tax returns, (4) implausible or inconsistent explanations of behavior, (5) concealment of income or assets, (6) failing to cooperate with tax authorities, (7) engaging in illegal activities, (8) an intent to mislead which may be inferred from a pattern of conduct, (9) lack of credibility of the taxpayer's testimony, (10) filing false documents, and (11) dealing in cash. See Spies v. United States, 317 U.S. 492, 499 (1943); Douge v. Commissioner, 899 F.2d 164, 168 (2d Cir. 1990); Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Recklitis v. Commissioner, 91 T.C. 874, 910 (1988). Although no single factor is necessarily sufficient to establish fraud, the combination of a number of factors constitutes persuasive evidence. Solomon v. Commissioner, 732 F.2d 1459, 1461 (6th Cir. 1984), affg. per curiam T.C. Memo. 1982-603. A taxpayer's intelligence, education, and tax expertise are also relevant for purposes of determining fraudulent intent. See Stephenson v. Commissioner, 79 T.C. 995, 1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984); Iley v. Commissioner, 19 T.C. 631, 635 (1952). We note that some conduct and evidence can be classified under more than one factor.

a.  Petitioner's Sophistication and Experience

Dr. Kalo was an educated person.  Additionally, he was familiar with the tax law and had a better than average knowledge of foreign investments.  Petitioner's knowledge in this area is sufficient that we believe petitioner knew enough to, at a minimum, ask for tax advice regarding foreign interest.  We find that Dr. Kalo did not inform his accountant or his financial advisor of his foreign bank accounts and that this failure to inform, from a taxpayer with petitioner's sophistication, indicates fraud.

b.  Consistent and Substantial Understatements of Income

The mere failure to report income is not sufficient to establish fraud.  Merritt v. Commissioner, 301 F.2d 484, 487 (5th Cir. 1962), affg. T.C. Memo. 1959-172; Parks v. Commissioner, supra at 664.  However, consistent and substantial understatement of income may be strong evidence of fraud.  Marcus v. Commissioner, 70 T.C. 562, 577 (1978), affd. without published opinion 621 F.2d 439 (5th Cir. 1980).  Moreover, a pattern of consistent underreporting of income, when accompanied by other circumstances indicating an intent to conceal income, justifies an inference of fraud.  Holland v. United States, 348 U.S. 121, 137 (1954).  Petitioners argue that during the years in issue they reported and paid, on their original income tax returns, over 94 percent of their tax liability and that this indicates

lack of an intent to evade taxes. We find petitioners' argument unpersuasive. In the instant case, petitioners' understatements are both consistent and substantial; they are evidence of fraud.

c. <u>Failure to Maintain Adequate Books and Records</u>

Failure to maintain adequate books and records of income may be indicative of fraud. <u>Truesdell v. Commissioner</u>, 89 T.C. 1280, 1302 (1987); <u>Gajewski v. Commissioner</u>, 67 T.C. at 200. Respondent showed at trial that accurate records of cash receipts for petitioner's medical practice were not maintained. Respondent contends that this along with other evidence shows that petitioner "skimmed" profits from his medical practice. Respondent has not convinced us that any fraud was committed by petitioner's professional corporation or by petitioner regarding the profits from that corporation; we will not, therefore, base a finding of fraud on the evidence regarding "skimming" presented in that regard.

d. <u>Attempts to Conceal Activities</u>

Petitioners contend that the principal point in their favor is that they did not attempt to conceal their assets. They argue that if petitioners' returns for the years in issue had been audited it would have been obvious that assets were unaccounted for and the whereabouts of those assets would have been easy to determine. Petitioners therefore argue that because the assets and income were readily discoverable there could not have been a

fraudulent intent to conceal the income. We disagree. There is ample evidence in the record that petitioner did in fact make attempts to conceal his interest income. Question 10 on Schedule B of petitioners' tax returns for the years in issue asks: "At any time during the tax year, did you have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)?" For the years 1986 and 1987, petitioner answered this question in the negative. For the years 1988 and 1989, petitioner answered yes to this question but only listed a bank account in Israel. In signing the returns, petitioner represented, under penalty of perjury, that he examined the schedules accompanying the returns and that they were "true, correct, and complete" to the best of his knowledge. His answers to this question indicate an attempt to conceal his foreign accounts which is a strong indication of fraud.

e. <u>Intent To Mislead</u>

False and inconsistent statements to respondent's agents during the course of their investigation indicate fraudulent intent. <u>Grosshandler v. Commissioner</u>, 75 T.C. 1, 20 (1980). Petitioner failed to mention any Canadian bank accounts when questioned about foreign accounts and when specifically questioned about Canadian accounts only mentioned that he thought that he had a Canadian account, but that the money was his

father's. By 1989 and prior to this interview, petitioner had in excess of $3 million in Canadian bank accounts. His explanation could only be seen as an attempt to mislead the agents and frustrate their investigation. We find that petitioner intended to mislead special agents during their investigation, and this indicates fraud.

f. Filing False Documents

This factor supports a finding of fraud for the same reasons discussed in subsection (d) of this Opinion. Petitioner's attempt to argue that he was misinformed about the taxability of the interest is not persuasive. Petitioner told special agents that he was told by an unnamed bank official that the interest was not taxable until withdrawn, yet petitioner could not name the official or the bank. An official from the Royal Bank of Canada testified that it is not the policy of the bank to advise clients on the taxability of interest in the United States. We find that petitioner intentionally withheld information regarding his foreign bank accounts from his accountant in an attempt to evade taxes. This is strong evidence of fraud. See Korecky v. Commissioner, T.C. Memo. 1985-63, affd. 781 F.2d 1566, 1569 (11th Cir. 1986).

g. Other Factors

We also consider it significant that petitioner pleaded guilty to violation of section 7203 for the 1987 tax year for

having willfully failed to disclose that he had interests in foreign bank accounts.  Although this conviction does not, in and of itself, establish a fraudulent intent, we consider the crime as evidence of fraud, especially when combined with other factors taken from the record as a whole.  Petzoldt v. Commissioner, 92 T.C. 661, 701-702 (1989); McGee v. Commissioner, 61 T.C. 249, 260 (1973), affd. 519 F.2d 1121 (5th Cir. 1975).

C.  Conclusion

We find that respondent has clearly and convincingly proven fraud on the part of petitioner for all of the years in issue, and we so hold.  This conclusion is based on the record as a whole and reasonable inferences therefrom, taking into account our determination as to the credibility of petitioner and the other witnesses presented at trial.  Petitioner has failed to show that any portion of the underpayment was not due to fraud. Therefore, we sustain respondent's determination that Dr. Kalo is liable for the fraud additions for 1986 through 1988 and for the fraud penalty for 1989.

Decision will be entered under Rule 155.